# THE CITY OF CHICAGO
## *v.*
## LOUIS RUMPFF.

## SAME
## *v.*
## JAMES TURNER.

1. MUNICIPAL CORPORATIONS—*interpretation of a particular ordinance.* Under a power granted to the city of Chicago, in its charter, to regulate and license the slaughtering of animals within the corporate limits, the common council passed what was termed an ordinance, in reference thereto, whereby a particular building was designated for the slaughtering of all animals intended for sale or consumption in the city, the owners of which, Messrs. Reid & Co., were granted the exclusive right for a specified period, to have all such animals slaughtered at their establishment, they to be paid a specific sum for the privilege by all persons exercising it; Reid & Co. to have the option of accepting such proposition, but which was not to take effect until they executed a certain bond therein required : *Held*, that this action of the corporate authorities could not be regarded as regulating or licensing the business, but was simply a conditional proposition made to Reid & Co., which, if accepted by them, would constitute a contract.

2. SAME—*cannot create monopolies.* That this contract tended to create a monopoly, and is therefore void, the corporation having no authority under its charter power to make it.

Syllabus.

3. SAME — *objects of — created solely for the public good.* Municipal corpora-
·tions are created solely for the public good, and, to that end, the corporate
authorities will be held to a strict exercise of their franchises.

4. SAME. They cannot confer pecuniary benefits, or grant monopolies to
any portion of their communities, or to individual members thereof, but must
exercise their powers for purely legitimate purposes.

5. SAME — *for slight inequalities in acts of — when will not render them
invalid.* But the adoption of reasonable measures in support of their legal
existence will not be invalidated, although slight inequalities in their benefits
may result.

6. SAME — *limitation of powers of.* A corporation being a mere creature of
the law, can only exercise such powers as are conferred upon it by the act cre-
ating it ; or such as are necessary to carry into effect those expressly delegated.

7. SAME — *extent of the power under this charter.* Under this charter
authority was conferred simply to pass ordinances to locate and construct,
and to regulate, license, restrain, abate or prohibit, slaughtering establishments
within the prescribed limits ; and, to that end, the corporate authorities may so
regulate the business as to prohibit its exercise except in a particular place ;
but the spot so designated must be open to the enjoyment of all persons alike,
upon the same terms and conditions.

8. SAME — *franchise of — must be exercised with prudence.* Corporate
franchises, whether municipal or private, are conferred in trust for the benefit
of the entire body of corporators, and, like all other trusts, must be exercised
with prudence and discretion.

9. SAME — *by-laws of — must be reasonable — vexatious ones void.* The by-
laws of a corporation must be reasonable, and such as are vexatious, unequal
or oppressive, or manifestly injurious to the interests of the corporation, are
void.

10. SAME — *by-laws in restraint of trade — and creating monopolies void.*
All by-laws made in restraint of trade, or which tend to create a monopoly
are void.

11. STATUTES — *act of* 1867, *amendatory of the charter of Chicago — does not
apply to contracts of this character.* This court cannot presume that the
legislature intended to ratify and confirm the contract with Reid & Co. by
the act of 1867, amending the city charter, as such contract is not named
therein, and is unreasonable and oppressive in its operation. This amend-
ment can only apply to contracts made by the corporation in the exercise of
its legitimate powers for purposes contemplated by the act creating it.

12. PENALTIES — *laws providing for — must be strictly construed.* The law
never favors forfeiture by construction ; and all laws providing for the forfeit-
ure of penalties must be strictly construed.

13. SAME — *clear right to recover must be shown.* A party proceeding for a
penalty must show that the defendant is clearly within the provisions of the
law.

92    CITY OF CHICAGO v. RUMPFF.    SAME v. TURNER. [Sept. T.,

Opinion of the Court.

14. SAME — *recovery of under the ordinance in question — cannot be had.* That under this so denominated ordinance a prosecution to recover a penalty attempted to be therein provided for against a person slaughtering animals at a place other than that of Reid & Co.'s establishment, could not be maintained.

APPEAL from the Superior Court of Chicago.

These were actions commenced by the appellant against the appellees, in the police court of the city of Chicago, for an alleged violation by them of an ordinance concerning slaughtering within the corporate limits. Appellees were fined in the police court, and appealed to the Superior Court, where a trial was had before the court, who rendered judgment for the appellees, from which appellant has prosecuted appeals to this court. The further facts in these cases are fully stated in the opinion.

Mr. A. W. ARRINGTON and Mr. S. A. IRVIN, for the appellant.

Messrs. BECKWITH, AYER & KALES, for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court:

As these cases present the same questions, they will be considered together in this opinion. It appears that the general assembly granted to the city of Chicago, in its charter, power to "direct the location and management of, and to regulate and license breweries, tanneries and packing houses, and to direct the location, management and construction of, and to regulate, license, restrain, abate and prohibit within the city, and the distance of four miles therefrom, distilleries, slaughtering establishments, establishments for steaming or rendering lard, tallow, offal and such other substances, as can or may be rendered, and all establishments or places where any nauseous, offensive or unwholesome business may be carried on." Clause 7, § 8, ch. 4, City Charter of 1863.

Under this authority, as it is claimed, the common council, on the 18th day of December, 1865, entered of record what is therein denominated an ordinance. Its material provisions are these: Section one declares, "That, in consideration of

the acceptance by John Reid & Co. of said city and their guaranty (provided by bond as hereinafter mentioned, within ten days from the date of the passage of this ordinance), that they will faithfully comply with the provisions of this ordinance, and all existing laws and ordinances, and all laws and ordinances that may hereafter be enacted or passed, relating to nuisances, authority and consent is hereby given and granted to said John Reid & Co., their heirs and assigns, from the 1st day of April, A. D. 1866, to have the exclusive right, to have all the slaughtering (except that done at the regular packing houses for packing purposes) carried on and done on their premises described as follows, to wit, the south half of block ten (10) in the south branch addition to the city of Chicago, in Cook county, in the State of Illinois."

The second section requires Reid & Co., before the 1st day of April, 1866, to erect good, ample and complete buildings and yards with the necessary conveniences, fixtures and arrangements, including hot and cold water, gas lights, etc., for slaughtering and taking care of animals. It also confers the right on all butchers to take their animals to that place and slaughter them therein. It also provides for furnishing the several butchers with a division or portion of the building, etc. The third section requires Reid & Co. to keep the buildings, yards and premises in good condition; and to remove the filth, etc., therefrom, as they may be required by ordinance.

The fourth section, under which these prosecutions were originated, is this: "After the 1st day of April, A. D. 1866, no other slaughtering establishment or establishments shall be suffered or permitted within the limits of the city of Chicago, nor shall any slaughtering by butchers or others be suffered or permitted, except as provided in section one of this ordinance, under a penalty of not less than twenty-five dollars nor exceeding one hundred dollars for each and every offense: *Provided*, that the city shall have the right to establish at any time hereafter, two additional slaughter houses, one to be located in the west division, and one in the north division." The fifth section declares that Reid & Co. may charge for the use of their estab-

94   CITY OF CHICAGO *v.* RUMPFF.   SAME *v.* TURNER. [Sept. T.,

Opinion of the Court.

lishment by the several butchers slaughtering animals therein, the usual offal of the same, and no more.

The sixth section requires Reid & Co. to employ, at their own expense at the establishment, one or more special police-men, and to keep it at all times open to the inspection of the city health officer or any of his deputies. The seventh section declares that the city shall only be answerable to Reid & Co. for the exercise of reasonable diligence in enforcing that portion of section 1, and which confers the exclusive right upon them of having all the slaughtering done upon their premises. It also declares, that, in case the ordinance, or any part thereof, shall be declared inoperative or void by this court, the city shall not be held answerable to Reid & Co. for damages which they may sustain by reason of its non-enforcement. The eighth section requires Reid & Co. to execute a bond, within ten days, for the faithful performance of the conditions of that and other ordinances and laws concerning nuisances. The ninth section declares, that, if Reid & Co. shall permit the establishment to become a nuisance, then the common council shall have the right to repeal the ordinance. These are the substantial parts of the ordinance under consideration.

Afterward, at the session of the general assembly, in 1867, the city charter was amended, and, among others, this provision was adopted:

" That the common council shall have power and authority to regulate and control the slaughtering of all animals in the city, or within four miles thereof, intended for consumption or exposed for sale in the city, and to enforce, by additional ordinances, any regulation, contract or law heretofore made on the subject."

Appellee contends that this was not an ordinance, and is incapable of being enforced as such. If it is a by-law, it is, to say the least, very informal. On its face it only purports to make a proposition to Reid & Co. for a contract, that they should have the exclusive right to have all animals intended for sale or consumption in the city slaughtered at their estab-

lishment. And the city proposed to use all reasonable efforts to compel all such animals to be slaughtered at that place for ten years from the first day of April, 1866, unless they should establish two others in the city at the places named. By the terms of this proposition, Reid & Co. were to have the option of accepting it, and it was not to take effect until they executed the bond as required. Until Reid & Co. complied, the proposition remained open and inchoate. All of its terms and conditions were entirely conditional. Such is not the language of a statute or of a by-law. They speak the language of command, and not that of mere conditional propositions.

It did not declare slaughter houses or the business of slaughtering animals in the city a nuisance, or prohibit all persons from maintaining such establishments or pursuing such an occupation. On the contrary, it excepts from its operation, slaughter houses where animals are prepared for packing purposes. This latter branch, no doubt, exceeds in the number of animals slaughtered, the other, as vast as is the consumption of so large a city as Chicago. In any point of view in which this resolution of the common council may be considered, we think it can only be held to be a contract after Reid & Co. assented to and accepted it.

Was this contract, then, binding upon the city or its inhabitants? Municipal corporations are only created for the better government and protection of local communities in the enjoyment of their rights, than can be afforded by general laws. The powers which they are authorized to exercise, are delegated to them to afford more ample protection to the community in their rights and privileges. Such bodies are never created to enable them to confer pecuniary benefits, or to grant monopolies to any portion of community, or to individual members thereof. The creation of such bodies is convenient, if not essential, for the regulation of the local police; to adopt and enforce all needful sanitary regulations; to establish and control markets; to repair highways, and perform the various other duties necessary to promote the comfort and well being of such densely crowded communities as constitute large cities. But

it is no part of the design, in organizing such bodies, that the corporate authorities shall enter into competition with its inhabitants in business or trade, or to sell, or even grant, special immunities to any portion of the inhabitants for their individual benefit or gain. The corporate authorities must exercise their franchises solely for the benefit of the community embraced within their limits. It is true, that, in exercising their powers for strictly legitimate purposes, some persons may derive greater benefits than others, and a portion may even sustain inconvenience, if not injury. But having adopted reasonable measures to carry out the purposes of their creation, they will not be invalidated, although slight inequalities in its benefits may result.

Again, such bodies can only exercise such powers as are expressly conferred by the State, or such as are necessary to carry into effect those expressly delegated. The charter of the city authorized the location, management and construction, and to regulate, license, restrain, abate or prohibit within the prescribed limits, slaughtering establishments; and this was only authorized to be done by ordinance. And the very nature of an ordinance excludes all idea of a contract.

It is believed, that the result of the authorities warrants the assertion that corporate franchises, whether municipal or private, are conferred in trust for the benefit of the entire body of corporators, and must, like all other trusts, be exercised with prudence and discretion. Hence their by-laws must be reasonable, and such as are vexatious, unequal or oppressive, or are manifestly injurious to the interest, of the corporation, are void. And of the same character are all by-laws in restraint of trade, or which necessarily tend to create a monopoly.

All by-laws should be general in their operation, and should bear equally upon all of the inhabitants of the municipality. Where privileges are granted by an ordinance, they should be open to the enjoyment of all, upon the same terms and conditions. That the common council had the right, under the large . powers conferred by the charter, to so regulate the business of slaughtering animals, as to prohibit its exercise, except in a

particular portion of the city, leaving all persons free to erect slaughtering houses, and to exercise the calling at the place designated, cannot be controverted. But an ordinance confining such a business to a small lot, or even a particular block of ground, is unreasonable, and tends to create a monopoly. It can hardly be said, that only a tract of one acre can be selected in a large city like Chicago, where it would not be unhealthy or offensive, and that it would be unhealthy or offensive on all of the lands adjoining, or in its vicinity, or in other portions of the city.

The charter authorizes the city authorities to license or regulate such establishments. Where that body have made the necessary regulations, required for the health or comfort of the inhabitants, all persons inclined to pursue such an occupation should have the opportunity of conforming to such regulations, otherwise the ordinance would be unreasonable and tend to oppression. Or, if they should regard it for the interest of the city that such establishments should be licensed, the ordinance should be so framed, that all persons desiring it might obtain licenses by conforming to the prescribed terms and regulations for the government of such business. We regard it neither as a regulation nor a license of the business, to confine it to one building, or to give it to one individual. Such action is oppressive, and creates a monopoly that never could have been contemplated by the general assembly. It impairs the rights of all other persons, and cuts them off from a share in not only a legal but a necessary business. Whether we consider this as an ordinance or a contract, it is equally unauthorized, as being opposed to the rules governing the adoption of municipal by-laws. The principle of equality of rights to the corporators is violated by this contract.

If the common council may require all of the animals for the consumption of the city to be slaughtered in a single building or on a particular lot, and the owner to be paid a specific sum for the privilege, what would prevent the making a similar contract with some other person, that all of the vegetables, or fruits, the flour, the groceries, the dry goods, or other com-

modities, should be sold on his lot, and he receive a compensation for the privilege? We can see no difference in principle. Nor is it a sufficient answer to say that butchering animals is a nuisance, as the city have not proceeded, so far as we can see, on that assumption. They could not have regarded the slaughter house of Reid & Co. a nuisance, or they would not have authorized its location and construction. And, if it was not, how can it be said, that others on adjoining lots, or even in its vicinity, similarly constructed and kept, would be nuisances? We are therefore of the opinion that this contract was not authorized and cannot be sustained.

It is, however, contended, that the amendment of the city charter, already quoted, ratified and confirmed this contract. We have seen that the contract did not reasonably regulate, control or license the slaughtering establishments of the city. And, inasmuch as this contract is not specifically named, we cannot presume that the legislature intended to ratify an unreasonable and oppressive contract, but only such as was in accordance with the purposes for which the charter had been granted, and not those which were opposed to the design of creating such bodies. Again, it only authorizes the enforcement of any regulation, contract or law, by additional ordinances. So far as we can see, no such additional ordinances have been adopted on that subject. Even if the legislature intended to confirm this contract, the city has not complied with the terms upon which it was authorized to be done.

It is again urged, that, whether it be an ordinance or a contract, in either case it is void for uncertainty. This proceeding is based on the fourth section, which declares that no other slaughter house shall be permitted in the city; and that no slaughtering by butchers or others shall be suffered or permitted, except as provided in the first section, under a penalty of not less than $25, nor exceeding $100, for each and every offense. Is this only an agreement on the part of the city, that they will not permit or suffer butchers, or others, to slaughter animals? Or is it a command to butchers and others not to slaughter animals? Who can say? If it can be con-

strued into a command directed to them, then what is the offense? Is it the slaughtering one, ten, or a drove of animals? Is the offense the killing of animals, or is it in maintaining the slaughter house, or both? Again, who is to incur the forfeiture? Is it the person keeping the slaughter house, or the butcher killing the animal; or is it the city which had contracted that all animals should be slaughtered on the premises of Reid & Co.? If intended to apply to a slaughter house, does the offense consist in its use for one day, or during the year, or other period?

The law never favors forfeitures by construction. All laws providing for the forfeiture of penalties must be strictly construed. To entitle the party to the recovery of a penalty, he must show that the defendant is clearly within the provisions of the law. We do not see that this provision, even if it was clearly an ordinance, would embrace these appellees. We can not say that they, by what they did, violated this provision. We might no doubt conjecture, that the common council intended to declare, that any person who should slaughter any animal within the specified limits, at a place other than Reid & Co.'s slaughter house, should incur the penalty. But they have failed to say so in terms, and, we think, by fair intendment. The forfeiture would as well apply to the city as to appellees.

That the city has the right, by reasonable and general provisions, by ordinance, to regulate and restrain all noxious and injurious callings within its limits, none can doubt. And that they may prevent slaughter houses from being maintained, or animals from being slaughtered in designated localities within the city, is equally true. And it may be that they can prohibit and wholly restrain it within the city limits. They, no doubt, have the power to designate the particular quarter of the city within which the business may be conducted, and prohibit it in others, and regulate and restrain them so as to prevent their becoming offensive or injurious, but in doing so all persons should be free to engage in the business within those localities by conforming to the municipal regulations.

That the common council can adopt an ordinance on this subject free from the objections to which this and like resolves are subject, is entirely obvious. And the city and its large population need suffer no inconvenience by holding this action of the common council inoperative.

The judgments of the court below are reversed and the causes remanded.

*Judgments reversed.*