## CHARLES H. TUGMAN

*v.*

## THE CITY OF CHICAGO.

1. MUNICIPAL CORPORATIONS — *ordinances must not be unreasonable.* Where power is conferred upon a municipal corporation to enact by-laws and ordinances for the better government of the inhabitants of the municipality, it can not, in the exercise of that power, enact ordinances that are unreasonable, oppressive, or such as will create a monopoly.

2. An ordinance which makes an act done by one penal, and imposes no penalty for the same act done, under like circumstances, by another, can not be sanctioned or sustained, because it would be unjust and unreasonable.

3. An ordinance which prevents one citizen engaging in a particular kind of business in a certain locality under a penalty, whilst another is permitted to engage in the same business in the same locality, is not only unreasonable, and therefore void, but its direct tendency is to create a monopoly, which the law will not tolerate.

4. The fact that certain persons were engaged in a particular kind of business in a given locality at the time of the adoption of an ordinance, would not authorize the municipal corporation, by such ordinance, to permit such persons to continue their business, whilst it prohibited others from engaging in the same business in the same locality.

5. LEGISLATIVE POWER—*to whom it may be delegated.* The legislative power is vested by the constitution in the General Assembly, and ordinarily it can not be delegated. The right, however, of the legislature to empower municipal corporations to make by-laws and ordinances for the welfare and government of the inhabitants of the corporation, can not be denied.

6. Where such power is conferred upon a municipal corporation, it is exercised by a body elected by the people to be affected; but if the legislature possess the power to delegate legislative authority to a body to be appointed by some judicial officer of the State, the people of the corporation might be deprived of self-government; they would be governed by

a body they had no voice in electing, which is repugnant to our theory of government.

7. BOARD OF HEALTH OF CHICAGO—*power to regulate the business of slaughtering.* Where one section of an act of the legislature conferred general power upon the board of health of a city to enact such by-laws, rules, regulations, etc., as they might deem advisable to promote and preserve the health, safety and sanitary condition of the city, etc., and another section of the same act provided, that the common council of the city should have power to regulate and control the slaughtering of all animals in the city, etc., it was *held*, that whilst the former section, taken by itself, was broad enough to confer power on the board of health to regulate slaughter houses, etc., yet, when considered in connection with the latter section, the power was in the common council, and not in the board of health.

APPEAL from the Criminal Court of Cook county; the Hon. WILLIAM W. FARWELL, Judge, presiding.

Messrs. TULEY, STILES & LEWIS, for the appellant.

Mr. RICHARD S. TUTHILL, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a prosecution, originally instituted before a police magistrate by the city of Chicago, to recover from Chas. H. Tugman a penalty of $10, for the violation of a regulation or ordinance adopted on the 12th day of December, 1871, by the board of health of the city of Chicago, which reads as follows:

"That from and after the first day of January, A. D. 1872, no distillery, slaughter house, rendering establishment or soap factory shall be erected or put into operation in any building not now used for such purpose, within the territory in the city of Chicago bounded as follows, to-wit: Fullerton avenue on the north, Thirty-fifth street on the south, Lake Michigan on the east, and Western avenue on the west."

The cause was taken by appeal from the police court to the criminal court of Cook county, where, upon a trial, judgment was rendered against appellant, for the sum of $10.

It is conceded that appellant owned a slaughter house within the limits designated by the ordinance, which was erected and put into operation after the 1st day of January, 1872, and at the time, and prior to the commencement of the action, he was engaged in slaughtering cattle therein, both for packing and city consumption.

It is also conceded, by both parties, that at and prior to the commencement of the suit, several other slaughter houses were in operation in said city, within the limits designated in the regulation, which were erected and in operation prior to the adoption of the ordinance.

There being no dispute as to the facts, the only question presented by the record is, whether the regulation or ordinance adopted by the board of health is valid or void.

The first position of appellant is, that the regulation is void, because it is unreasonable and oppressive.

Where power is conferred upon the legislative department of a municipal corporation to enact by-laws and ordinances for the better government of the inhabitants of the municipality, the body intrusted with that power, in its exercise, can not enact ordinances that are unreasonable, oppressive, or such as will create a monopoly.

Each member of a municipal corporation is required to share the burdens incident to such an organization; but, at the same time, all are entitled to share and participate equally in all benefits to be derived from such a government.

An ordinance, therefore, which would make an act done by one penal, and impose no penalty for the same act done, under like circumstances, upon another, could not be sanctioned or sustained, because it would be unjust and unreasonable. Dillon on Municipal Corporations, sec. 256.

In the case of the *City of Chicago* v. *Rumpff*, 45 Ill. 90, where the validity of an ordinance was called in question, which provided that all slaughtering for city consumption should be done at the establishment of a particular firm, and prohibited, under a penalty, slaughtering at any other place,

it was said : "All by-laws should be general in their opera-
tion, and should bear equally upon all the inhabitants of the
municipality. When privileges are granted by an ordinance,
they should be open to the enjoyment of all upon the same
terms and conditions. That the common council had the
right, under the large powers conferred by the charter, to so
regulate the business of slaughtering animals as to prohibit
its exercise, except in a particular portion of the city, leaving
all persons free to erect slaughtering houses, and to exercise
the calling at the place designated, can not be controverted.
*    *    *    *    When that body have made the neces-
sary regulations required for the health or comfort of the
inhabitants, all persons inclined to pursue such an occupation
should have the opportunity of conforming to such regula-
tions, otherwise the ordinance would be unreasonable, and
tend to oppression."

The same principle was clearly and forcibly enunciated in
the case of *Mayor* v. *Thorne*, 7 Paige, 261, in the following lan-
guage : "As all by-laws must be reasonable, the common
council can not make a by-law which permits one person to
carry on the dangerous business, and prohibit another, who
has an equal right, from pursuing the same business. Nei-
ther have they the right to permit the dangerous manufacture
to be carried on in buildings already erected, and to prohibit
these defendants, whose buildings were destroyed by an incen-
diary, from rebuilding the same for the purpose of carrying
on a manufacture which is permitted to others." See, also,
Cooley's Constitutional Limitations, 200.

It will be observed, that the regulation, to enforce which
this suit was instituted, prohibits the use and operating of
slaughter houses which should be erected after the first day
of January, 1872, while those that were erected prior to that
time are left perfectly free to be operated as the owners thereof
may desire.

If the health or comfort of the city required the prohibition
of new slaughter houses within a designated part of the city,

the same reason would surely demand that old ones should be discontinued.

If one of the citizens of Chicago is permitted to engage in the business of slaughtering animals in a certain locality, an ordinance which would prevent, under a penalty, another from engaging in the same business, would not only be unreasonable, and, for that reason, void, but its direct tendency would be to create a monopoly, which the law will not tolerate.

The fact that certain persons were engaged in the business within the district designated in the ordinance at the time of its adoption, gave them no right to monopolize the business, nor would such fact authorize the board of health to provide that such persons might continue the avocation, while others should be deprived of a like privilege who should engage in the business at a later period.

If the board of health had any power to adopt an ordinance on the subject, the ordinance, to be valid, should not discriminate in favor of any citizen. If it prohibited one from carrying on the business, that prohibition should extend to all, regardless of the time the business may have been commenced.

A regulation of this character, to be binding upon the citizen, must not only be general, but it should be uniform in its operation.

It is also urged, that it was incompetent for the legislature to confer upon the board of health legislative powers, and for that reason the regulation adopted by the board is void.

The board of health derives its power, whatever it may be, from an act of the legislature, approved March 9, 1867, "An act to amend the charter of the city of Chicago." Private Laws of 1867, page 754.

The first section of chapter four of the act provides, that the mayor of the city, with six other persons, to be appointed by the judges of the Superior Court, shall constitute the board of health of the city.

Section two, of the same chapter, is as follows:

"Said board of health may enact such by-laws, rules and regulations as it may deem advisable, in harmony with the provisions and objects of this act, and all acts, the object of which is to promote and preserve the health, safety and sanitary condition of the city, now existing or that may hereafter be passed, not inconsistent with the constitution or laws of this State, for the regulation of the action of said board, its officers and agents, in the discharge of its and their duties, and for the regulation of the citizens or public, and from time to time may alter, amend or annul the same."

Under this section the ordinance in question was adopted.

The legislative power, by the constitution of the State, is vested in the General Assembly. Ordinarily, this power can not be delegated. The right, however, of the legislature to empower municipal corporations to make by-laws and ordinances for the welfare and government of the inhabitants of the corporation, can not be questioned or denied. It may, however, be seriously questioned whether the legislature has the power to confer the law-making power upon a body not chosen or elected by the people, such as the board of health.

Where the legislature delegates authority to a municipal corporation to enact ordinances, these ordinances are enacted by a board of aldermen or common council, chosen or elected directly by the people of the municipality. Thus the people have a direct voice in making the laws by which they are to be governed. But if the legislature possess the power to provide that some judicial officer of the State may appoint, in a city, a body of men styled a board of health, and that board can be empowered to make ordinances for the government of the corporation, the people of that corporation may be deprived of self government. They will be governed by ordinances adopted by a body they had no voice in electing. This would be repugnant to the theory of our government.

Independent, however, of this question, which it is not necessary to decide in this case, we are of opinion that the

act of 1867 did not confer the power upon the board of health to adopt the ordinance, but, on the other hand, the common council elected by the people was intrusted with the power to adopt ordinances in relation to and upon the identical subject matter over which the board of health assumed to act.

Section twenty-four, of chapter five, of the act of 1867, which provided for the creation of the board of health, declares, that the common council shall have power and authority to regulate and control the slaughtering of all animals in the city, or within four miles thereof, intended for consumption or exposed for sale in the city, and to enforce, by additional ordinances, any regulation, contract or law heretofore made on the subject.

If it be true that the board of health was empowered, by section two of the act, to adopt the ordinance in question, then the legislature, by one and the same act, conferred upon two independent bodies, each having the same territorial jurisdiction, authority, by ordinance, to regulate and control the same thing. To impute an intention of this character to the legislature is so unreasonable and inconsistent, that we can not sanction it.

We can not understand how the power could, at the same time, exist in the two bodies to control, by ordinance, the same thing. The common council might adopt one regulation, and the board of health another, entirely different. Should that occur, which would the citizen be bound to obey? The regulation adopted by the one might be so inconsistent with that enacted by the other, that an observance of the one might be a violation of the other.

We can not, therefore, believe that it was the design of the General Assembly to confer legislative power over this subject both upon the common council and the board of health.

While, perhaps, the language used in section two might be regarded broad enough to confer the power upon the board of health, had section twenty-four been omitted from the act,

yet, as the power to legislate upon the subject is expressly given to the common council by the latter section, that general intent expressed in the former must give way to the latter. Sedgwick on Statutory and Constitutional Law, 360. We are, therefore, of opinion, that no power was conferred upon the board of health to adopt the ordinance in question.

The judgment will be reversed.

*Judgment reversed.*