## The City of Danville v. Thomas Noone.

1. ORDINANCES—*Privileges Granted Must be Open to All upon Equal Terms.* —When privileges are granted by an ordinance of a city, they must be open to the enjoyment of all persons similarly situated upon equal terms and conditions, and an ordinance framed so as to grant such privileges to some and refuse them on equal terms to others, is invalid for being unreasonable, oppressive, and creating a monopoly.

2. SAME—*Designating Cab Stands at Depots.*—A city ordinance contained the following : The city marshal shall designate stands for all cabs, coaches, omnibuses, or other vehicles at all railroad depots, where the same shall stand while waiting for passengers or property; and shall also designate and fix the stands at other points in the city where all drays, carts, coaches, cabs or other licensed vehicles shall stand while waiting for passengers or employment; and said city marshal shall make all necessary rules and regulations for the use and occupation of said stands by such licensed vehicles. *Held,* that such provision does not authorize the chief of police (formerly the city marshal) of the city to designate certain stands at a depot, which are more conveniently located for receiving and discharging persons and property, to be used exclusively by the licensed vehicles of one company, and require the licensed vehicles of other persons to occupy at that depot, other stands which are less conveniently situated for the same purpose, irrespective of whether the vehicles of the one or the other arrive first.

City of Danville v. Noone.

**Prosecution Under City Ordinance.**—Appeal from the Circuit Court of Vermilion County; the Hon. FERDINAND BOOKWALTER, Judge presiding. Heard in this court at the November term, 1901. Affirmed. Opinion filed June 20, 1902.

MABIN & CLARK, attorneys for appellant.

GEORGE T. BUCKINGHAM, attorney for appellee.

An ordinance which makes an act done by one penal, and done by another under the same circumstances not penal, is illegal and void. An ordinance which creates a monopoly is illegal and void. Dillon, Municipal Corporations, Sec. 332; City of Chicago v. Rumpff, 45 Ill. 90-96; Tugman v. City of Chicago, 78 Ill. 405; Zanone v. Mound City, 103 Ill. 553-6; Hibbard v. Chicago, 173 Ill. 91.

An ordinance which prevents one citizen from engaging in a particular business, in a certain locality, under a penalty, while another is permitted to engage in the same business in the same locality, is not only unreasonable and void, but its direct tendency is to create a monopoly, which the law will not tolerate. Tugman v. Chicago, 78 Ill. 405; City of Cairo v. Feuchter, 159 Ill. 155; City of Lake View v. Tate, 130 Ill. 247; City of Bloomington v. Wahl, 46 Ill. 489; City of Chicago v. Netcher, 183 Ill. 104; Cicero Lumber Co. v. Cicero, 176 Ill. 1-27.

All ordinances should operate on all alike. It can not be left to the uncontrolled will of one man to apply it to one and to exempt another from its provisions. In such case he becomes a law-giver, which can not be tolerated. Any ordinance which vests the power in an officer to say that one shall, and another shall not, do a certain thing, is illegal and void. Dillon, Municipal Corp., Sec. 321; McGregor v. Lovington, 48 Ill. App. 211; City of Chicago v. Trotter, 136 Ill. 430; Cicero Lumber Co. v. Cicero, 176 Ill. 1-27; City of Cairo v. Coleman, 53 Ill. App. 680.

MR. PRESIDING JUSTICE BURROUGHS delivered the opinion of the court.

The city of Danville brought suit against Thomas Noone before a justice of the peace of Vermilion county on May

25, 1901, to recover $50 as a penalty for his alleged violation of the ordinance of the city which provides for the licensing and regulating of persons keeping and using vehicles of any kind for the carrying of persons or property for hire within the city. After the case was tried before the justice of the peace, it was taken to the Circuit Court by appeal, and there tried by the court without a jury on a written statement of facts by consent of parties, and resulted in a judgment in favor of the defendant. The city having excepted to the judgment, brings the case to this court by appeal and insists that the same ought to be reversed for the alleged reason that it is against the law applicable to the facts in the case.

The statement of facts is as follows:

" The plaintiff, the city of Danville, is a municipal corporation, duly incorporated and existing under and by virtue of the laws of the State of Illinois. On May 1, 1901, and before then, the city of Danville had in full force and effect a certain ordinance in the words and figures following, to wit:

' Section 1. No person shall keep or use for hire for the carrying of persons or property any vehicle of any kind or description, within the city of Danville, without first obtaining a license therefor, under a penalty of not less than $5, nor more than $50 for each offense; Provided, this section shall not apply to liverymen hiring out vehicles to persons for single trips, or in the course of the usual or ordinary business of liverymen; nor shall the same apply to merchants, lumbermen and other persons who keep and use vehicles for the delivery of property sold by them and delivered to the purchasers thereof free of charge; nor shall the same apply to teams hired by the day or week, and not engaged in carrying passengers.

Section 2. There shall be charged and paid for a license under this chapter the following rates:

First. For omnibuses running between the hotels and railroad depots and other parts of the city the sum of $5 per annum for each omnibus.

Second. For each hackney coach or other two-horse carriage, wagon, hack or vehicle used for carrying passengers, the sum of $5 per annum.

Third. For each cab or other one-horse vehicle used for carrying passengers, the sum of $5 per annum.

City of Danville v. Noone.

Fourth. For each truck, dray or other vehicle used for carrying freight or property, the sum of $1 per annum.

Fifth. For each hackney coach, cab, omnibus, hack, carriage or other vehicle running transiently in the city during fair time and other days when there is a public demonstration in the city, the sum of $5 per day shall be charged for each vehicle carrying passengers for hire.

Section 3. Every person keeping or using any vehicle requiring a license shall cause the number of the license of such vehicle to be conspicuously painted or placed upon the same where it can be readily seen; and any person neglecting or refusing so to do shall be fined not less than $3 nor more than $25.

Section 4. No person shall be entitled to a license under this chapter except such person is a resident of Danville township, and over the age of twenty-one years, and the owner of the vehicle or vehicles for which he desires a license.

Section 5. Before a license shall be issued to any person to keep or use for hire any vehicle, he shall execute a bond to said city in the sum of $500, with sureties to be approved by the mayor, conditioned for the faithful observance of all ordinances of the city relating to vehicles, and that he will promptly deliver all property intrusted to him to the persons entitled thereto.

Section 6. Charges for the transportation of persons and property by all persons licensed hereunder shall be as follows, viz:

First. For carrying each passenger between any two points within the city, twenty-five cents.

Second. For the use of any two-horse cab, carriage or other vehicle, with driver, by the hour, the sum of $1 per hour.

Third. For the use of any one-horse vehicle, by the hour, with driver, fifty cents per hour.

Fourth. For carrying merchandise or property of any kind upon a wagon, truck or dray, for any distance not exceeding six blocks, the sum of twenty-five cents per load; for any distance exceeding six blocks, fifty cents per load.

Section 7. Any person licensed under this chapter, or the driver of any such licensed vehicle, who shall charge, or cause to be charged, any greater sum than the rates provided in section six of this chapter, for carrying any passenger or property, shall be fined not less than $5, nor more than $100 for each offense, and the owner of such vehicle

shall in addition thereto forfeit his license for the same, in the discretion of the mayor.

Section 8. No driver of any coach, cab, dray or other vehicle licensed under this chapter, shall, at any depot, or at any stand waiting for employment or other place, leave his team, 'bus, carriage or vehicle to solicit passengers, or shall conduct himself in a boisterous or disorderly manner, or use any indecent or profane language, or in any way vex or annoy any traveler, passenger or other person, or unnecessarily snap or flourish his whip, or obstruct any street or sidewalk in said city, under a penalty of not less than $3, nor more than $100.

Section 9. The city marshal shall designate stands for all cabs, coaches, omnibuses, or other vehicles at all railroad depots, where the same shall stand while waiting for passengers or property; and shall also designate and fix the stands at other points in the city where all drays, carts, coaches, cabs or other licensed vehicles shall stand while waiting for passengers or employment; and said city marshal shall make all necessary rules and regulations for the use and occupation of said stands by such licensed vehicles. Provided, that no such stand shall be assigned for any such vehicles in front of any premises, against the wish of any owner or occupant of the same. Any owner or driver of any such licensed vehicle, who shall cause, or permit the same to stand or remain at any place, waiting for passengers or employment, other than the one assigned for the same, or shall violate any of the rules of the city marshal regulating such stands as aforesaid, shall be fined not less than $3, nor more than $50 for each offense.

Section 10. The city marshal and the several police officers of the city shall have power to order the driver or other person having charge of any licensed vehicle, to remove such vehicle away from any place in any of the streets, which in his or their opinion may be improperly incumbering such street, or obstructing or impeding public travel; and any person refusing or neglecting to comply with such order shall be fined not less than $2, nor more than $20.

Section 11. Any owner or driver of any cab, coach or other licensed vehicle, who shall induce anybody to employ him, by knowingly or wantonly misinforming or misleading such person, either as to the time or place of the arrival or departure of any railroad train, or the distance to, or location of any depot, office, station, hotel, public place or private residence within said city, or shall be guilty of any

City of Danville v. Noone.

other fraud, extortion, or attempted fraud or extortion, upon such person, shall be fined not less that $5, nor more than $100 for any or either of the aforesaid offenses.

Section 12. The driver of every licensed vehicle shall keep in his possession at all times, a certified copy of section six of this chapter, or any amendments thereto hereafter passed by the city council, and shall exhibit the same to any person employing him, who shall demand the same, under a penalty of not less than $3.'

On May 1, 1901, the city of Danville had issued a license to one John Noone, proprietor of a 'bus line, for each of the several vehicles owned by him, and had also issued a license to Green & Company, proprietors of another 'bus line, for each of the several vehicles owned by them, the said Green & Company making all trains on regular schedule time. Both of these licenses are of the same date and of the same terms. Thomas Noone, the defendant, was a driver in the employ of John Noone. At the depot of the 'Big Four Railroad' in the city of Danville, the principal street runs north and south, the railroad runs east and west. The depot platform is on the north side of said railroad tracks and on the west side of said street. This platform is some twenty-five or thirty feet wide, and just north of the east end thereof is a long space of public ground at which vehicles may stand while awaiting the arrival of passengers. The trains of the 'Big Four Railroad' stop west of said Vermilion street, and therefore passengers who alight upon the platform from incoming trains proceed along the platform in an easterly direction toward Vermilion street, that is to say, the great majority of them do. In so doing, such passengers necessarily reach the west end of the said space devoted to 'buses, etc., first. Some time prior to the arrest of the defendant, the chief of police, William Wandrick, purporting to act under authority of the ordinance aforesaid, had given to the 'buses and cabs of Green & Company, the first two western places, to be reserved for them at all trains; and to the hacks and cabs of Noone, the third space counting from the west; that is, the vehicles of Green & Company were allowed to take the first two places along this platform farthest west, or what is known as the first and second places at which passengers arrive. Each of these 'bus line proprietors and drivers had been notified of this assignment by the chief of police. On the day in question, Thomas Noone, the defendant, driving one of the cabs of John Noone, went to the Big Four depot and found a cab of Green & Company in the first or extreme

western place; he then drove into the second place. The policeman on duty directed him to drive out of said place and give the same to one of Green & Company's cabs which arrived later. This the defendant declined to do, and was accordingly arrested. The complaint made against him is as follows:

' THOMAS NOONE TO THE CITY OF DANVILLE, DR.

To fifty dollars for violation of section No. 9 of chapter No. 41 of the Revised Ordinances of said city of Danville, entitled " Vehicles," passed and approved on the 30th day of April, A. D. 1892, in this, to wit:

That the said Thomas Noone on or about the 24th day of May, A. D. 1901, before the commencement of this suit, at Danville, and within the corporate limits of the same, unlawfully did then and there cause and permit a cab, licensed under and by virtue of the ordinances of the said city of Danville, to stand and remain at the city depot of the C., C., C. & St. L. R. R. Co., in said city of Danville, waiting for passengers and employment, at a place other than the one assigned for the said cab by the chief of police (formerly called city marshal) of the said city of Danville, and did then and there violate the rules of the said chief of police (formerly called city marshal) regulating the stands for such vehicles aforesaid, the said Thomas Noone being then and there the driver of the said cab, contrary to the provisions of the ordinances of the said city of Danville.

                                        J. H. LEWMAN,
                                          City Attorney.'

The defendant committed no other offense, except to drive into the space which the chief of police had allotted to the cabs and vehicles of said Green & Company, to be reserved for the vehicles of said company at all times."

The only important question raised or discussed in this case is whether the ninth section of the ordinance should be construed as authorizing the chief of police of the city to designate certain stands at the " Big Four " depot in that city, which were more conveniently located for receiving and discharging persons and property there, to be used exclusively by the licensed vehicles of Green & Company, and require the licensed vehicles of other persons to occupy at that depot, other stands which were less conveniently located for the same purpose, irrespective of whether the vehicles of the one or the other arrived first.

City of Danville v. Noone.

It is conceded on both sides that the city possessed the power, under the statute, to license, tax and regulate hackmen, draymen, omnibus drivers and others pursuing like occupations, but it is argued for the city that by the terms of the ninth section of the ordinance, the chief of police properly designated which stands at the depot vehicles of Green & Company could occupy, and which stands there those of John Noone could occupy, and that neither could occupy the stands designated for the vehicles of the other without incurring the penalty prescribed by the ordinance, regardless of whether the vehicles of the one or the other arrived at the depot first.

Counsel for appellee, Thomas Noone, contend that inasmuch as the stands which were designated for the exclusive use of the vehicles of Green & Company were more conveniently located for receiving and discharging persons and property than those designated for John Noone, the manner of regulating the business which the city had licensed both to carry on, was unreasonable and oppressive to John Noone, as well as being calculated to create a monopoly thereof in favor of Green & Company, which was not authorized by that section, and even if it was, it would be void for that reason.

We are of opinion that the position taken by counsel for appellee is the proper one; for when privileges are granted by an ordinance of a city, they must be open to the enjoyment of all persons similarly situated upon equal terms and conditions; and an ordinance framed so as to grant such privileges to some and refuse them on equal terms to others would be invalid for being unreasonable, oppressive, and creating a monopoly. City of Chicago v. Rumpff, 45 Ill. 90; Tugman v. City of Chicago, 78 Ill. 405, and City of Chicago v. Trotter, 136 Ill. 430.

To construe the ordinance so that it authorized the city marshal to designate more favorable stands for the vehicles of Green & Company at the depots, than those designated for the vehicles of others, would render it invalid for providing an unreasonable and oppressive manner of exercising

the power to regulate the business, and would create a monopoly.

The learned judge who tried this case in the Circuit Court therefore correctly held the ordinance did not confer such authority upon the chief of police, and the judgment will be affirmed.