176

In the Matter of the Application of PEEKSKILL PACKING Co., INC., Petitioner, for an Order against THE BOARD OF HEALTH OF THE VILLAGE OF PEEKSKILL, Respondent.

Supreme Court, Special Term, Westchester County, June 29, 1939.

*Doyle & McPherson,* for the petitioner.

*Edward G. Halsey, Jr.,* for the respondent.

ALDRICH, J. The petitioner seeks to erect a packing house with incidental slaughter house or abattoir on certain real property in the village of Peekskill. This application is for a mandatory order requiring the board of trustees of the village acting as the board of health of said village to approve the plans and specifications submitted by the petitioner for that purpose. In opposition to the application the respondents make four objections: *First,* it is claimed that this proceeding was not instituted within the period of four months after the board of health refused approval of the plans and specifications. From the papers submitted it appears, without contradiction, that after its first action, upon request of the petitioner for further consideration, the board of health gave further consideration and subsequently again refused approval. The latter action was taken within four months and the proceeding appears to have been brought in time. This objection must be overruled. *Second,* it is urged that by virtue of the charter of the village of Peekskill the board of trustees have power to prohibit or regulate all slaughter houses, or the slaughtering of all animals within said village. The charter of the village, as revised by chapter 117 of the Laws of 1883, as amended to January 1, 1903, has been submitted in printed form for the use of the court. The provisions of that charter with respect to the portion hereinafter quoted have not been since amended. By subdivision 17 of section 3 of title V of the charter the board of trustees " shall have full power and authority within said village, and it shall be their duty * * * 17. To prohibit or regulate all slaughter houses, or the slaughtering of all animals within said village." It does not appear, however, that the board of trustees of the village as such have ever exercised the power so granted by the adoption of any ordinance or regulation thereunder. At any rate, the respondents do not submit any such alleged ordinance or regulation adopted by the board of trustees. This objection is, therefore, untenable. *Third,* the board of health argues that the zoning board of appeals had no authority under the zoning ordinance to grant any variance and that the conditional variance granted is void. The case of *Matter of Beckmann* v. *Talbot* (278 N. Y. 146) is authority for the proposition that the zoning board of appeals had jurisdiction to grant a variance for the use of the premises for the purposes indicated and that such determination can be reviewed only by certiorari. The determination was made many months ago and it is conceded that no review thereof was ever attempted by anybody. A copy of the zoning ordinance has

been submitted by the counsel by consent upon the application. By that ordinance a variance may be made "subject to appropriate conditions and safeguards" (Art. XIII, § 4). The requirements of the zoning board of appeals that the variance be granted upon condition: "*First*, that the plans and specifications for such abattoir or slaughter house be approved by the local board of health of the village of Peekskill, and by the Westchester county board of health, and also by the State of New York, through its proper boards; and *second*, upon the further condition that the operation of said abattoir or slaughter house be under the inspection and control of the local board of health and the Westchester County Board of Health," were not unreasonable, arbitrary or void. *Fourth*, it is further contended that a slaughter house or abattoir cannot be maintained or operated in the village without the consent of the board of health. There is submitted what purports to be a copy of section 14 of certain sanitary regulations adopted by the board of health of the village on May 5, 1911. This section, among other things, provides that "No person or persons, without the consent of the board of health, shall build or use any slaughter house within the limits of the village of Peekskill." The claim is that the board of health may well refuse its approval of the plans and specifications under the reserved power contained in that section. In other words, the board of health claims the right to entirely prohibit any slaughter house within the limits of the village without its consent.

At the present time the board of trustees of the village and the board of health of the village are composed of the same persons. (Public Health Law, § 20; Village Law, §§ 43, 85.) The situation was different, however, in 1911 when the alleged section 14 was adopted by the board of health. By chapter 165 of the Laws of 1909, section 20 of the Public Health Law required that the board of health should consist of not less than three nor more than seven persons, "not trustees of the village." The section continued in that form until 1913 when section 20 was amended to provide that "in villages the board shall consist of the board of trustees of such village." (Laws of 1913, chap. 559.) The provision has continued in substantially the same form to date. The history of the Village Law is substantially the same. Chapter 64 of the Laws of 1909, relating to villages, by section 43 of the Village Law provided for a board of health in each village consisting of not less than three nor more than seven persons appointed by the board of trustees of such village "in the manner provided by article 3 of the Public Health Law." Section 43 was amended in 1915 (Laws of 1915, chap. 323) to provide that the board of health in each village shall consist of

the board of trustees in each village. In substance, that language has continued to the present time.

In 1911, when section 14 of the sanitary regulations was adopted, the board of trustees of the village and the board of health of the village were entirely separate and independent bodies. In order to justify the regulation adopted by the board of health, authority for it must be found in the statutes as then constituted. The general powers and duties of local boards of health are set forth in section 21 of the Public Health Law. The respondents do not refer to any other provision of statute which is claimed to enlarge the authority therein contained. By chapter 480 of the Laws of 1909, the Public Health Law was amended as to section 21. As so amended it provided: " Every such local board shall make and publish from time to time all such orders and regulations as they may deem necessary and proper for the preservation of life and health, and the execution and enforcement of this chapter in the municipality." By chapter 559 of the Laws of 1913, section 21 was amended to read: " Every such local board shall make and publish from time to time all such orders and regulations, not inconsistent with the provisions of the sanitary code, as it may deem necessary and proper for the preservation of life and health and the execution and enforcement of this chapter in the municipality." The provision appears in substantially the same form today. (Public Health Law, § 21.)

There was then, in 1911, in force a specific provision adopted by the Legislature by which the authority to regulate or prohibit slaughter houses in the village was conferred upon the board of trustees. There was a general provision which gave the local board of health, an entirely different body, general authority to make and publish from time to time all such orders and regulations as it might deem necessary and proper for the preservation of life and health, etc. No specific authority with reference to slaughter houses was therein provided for. Under such circumstances, it is a reasonable inference that the legislative intent was that the power to prohibit slaughter houses was vested in the board of trustees and that the general authority vested in the board of health was merely of an administrative nature having reference to sanitary regulations so far as the construction of buildings, etc., was concerned and the operation of such establishments. In other words, the court has reached the conclusion that the board of health in 1911 in this village had no authority to prohibit slaughter houses absolutely or to provide that they should not be operated in the village without the consent of the board of health. Such conclusion is supported to a considerable extent by the case of *Tugman* v. *Chicago* (78 Ill. 405), where a somewhat similar situation arose. It does not appear

that the sanitary regulations of the board of health adopted in 1911 have ever been adopted by the board of trustees as such or that they have become, by virtue of any act of the board of trustees, since the two boards have been composed of the same persons, general ordinances or regulations of the board of trustees.

So considering the statutes we are relegated to the facts and circumstances indicated by the opposing papers as the ground for the refusal of approval of the plans and specifications. It is conceded that the plans and specifications were submitted to the board of health. It is also conceded that those plans and specifications were satisfactory to the building commissioner who originally issued a permit thereon and later revoked the permit by direction of the mayor. It is not claimed that these plans and specifications are not satisfactory for the general purposes intended. No suggestion has been made at any time, either in the papers, brief or upon the argument, that the plans and specifications are defective in the slightest particular or that, so far as the board of health is concerned, that they should be amended or supplemented in any fashion. The ground of the refusal of the approval as shown by the papers was simply that in the opinion of the board of health a slaughter house should not be constructed anywhere in the village. Such an assumption of authority on the part of the board of health does not appear to be warranted by the circumstances and the case appears to be controlled to that extent by the cited authority of *Beckmann* v. *Talbot* (278 N. Y. 146). (See, also, *Matter of Small* v. *Moss*, 279 id. 288.)

Item " First " of the conditions of the variance granted by the zoning board of appeals had relation to the approval of the plans and specifications only. The board of health was not called upon to express any general approval of the construction of the packing house, etc. It has no general authority by virtue of section 14 of the sanitary regulations to insist upon a general refusal of approval.

The application for an order in the nature of mandamus is granted to the extent of commanding the board of trustees, acting as the board of health of said village, to approve the plans and specifications submitted by the petitioner. Such approval may be limited to the approval of the plans and specifications as such, without indicating any general consent to the erection or use of the building for a slaughter house.

The counsel for the respondents seems to proceed upon the theory that the sanitary regulations of 1911 adopted by the board of health have the force of an equivalent ordinance adopted by the board of trustees under the charter provisions. There is no authority presented in support of that contention. Nor does it appear that

any action on the part of the board of trustees as such has at any time accomplished that result. We are dealing with a situation as it actually exists so far as it can be learned from the documents presented, etc. What the situation might be in the event of the adoption of a general ordinance by the board of trustees under the specific charter provision need not be now considered.

Settle order on two days' notice at chambers, Poughkeepsie.

All papers submitted have been forwarded to the clerk at Special Term, Part I, White Plains.

In view of the importance of the question involved, if the respondents desire to appeal, a stay will be granted for sufficient time to enable the appellants to apply to the Appellate Division or a justice thereof for a further stay pending the hearing and determination of the appeal.