## STATE *v.* L. B. GOSS.

*Criminal Law.    Intoxicating Liquors.    Express Agent.*
*Station Agent.*

1. When an express agent receives by express a package marked C. O. D., containing intoxicating liquor, and, knowing its contents, delivers it to the consignee, collects the pay therefor and transmits it to the consignor, he is liable to conviction under an indictment charging him with the illegal sale of such liquor; but when in such case he does not know the contents of the package, he is not liable, unless he had reason to believe or suspect what it contained.

2. And the rule is the same where the agent delivered the liquor to a stage driver, who paid for it with money furnished by the consignee, where it did not appear that the express company had undertaken to deliver it beyond the terminus of its own transit; or that the stage driver was an express carrier; for a delivery to the stage driver was a delivery to the consignee.

3. EXPRESS COMPANY. An express company is not bound to transport and deliver intoxicating liquor, if thereby it would incur a penalty.

4. Nor is such company, as a general thing, bound to know the contents of packages offered for carriage; nor are its agents presumed to know.

COMPLAINT charging the respondent with the illegal sale of intoxicating liquor. Appeal from a justice court to the County Court. Trial by jury, June Term, 1885, Caledonia County, Ross, J., presiding. Verdict, guilty. The case appears in the opinion.

*L. P. Poland*, for the respondent.

1. If the defendant had known what the boxes contained he violated no law; indeed it was his legal duty to deliver them, and he would have subjected himself to liability if he had refused to deliver them. It is not claimed that he would be liable to prosecution if he had not received the money and forwarded it to the parties forwarding the boxes. The clear intent and purpose of the law was to prohibit public carriers from bringing and delivering intoxicating liquors to persons *to use and dispose of in violation of law,* and to leave them bound to their common and legal duty to transport and deliver for all other

State *v.* Goss.

people. It is now claimed that by collecting the bill and returning the money to the parties sending the goods the defendant was himself the *vender*, and so guilty of an illegal sale of intoxicating liquor. It has become an almost invariable practice, where goods are sent for at some distant point, to have them forwarded C. O. D., and have the money returned by the express carrier. The convenience and safety of this mode of business has made it almost universal. The legislature who enacted this law must be presumed to have perfectly understood this common course of doing express business.

2. The agent is certainly not liable unless he has knowledge that the article he delivers is intoxicating liquor. The court below held that it was wholly immaterial whether he knew it or not. Ignorance of the *law* is never a defence against a criminal act, whether the crime be one involving dishonesty or turpitude or one made criminal by law. But ignorance of any *fact*, that is an essential part of the criminal act, is always an excuse. In *Kreamer* v. *State*, the Supreme Court of Indiana decided that no conviction could be had under a statute forbidding the sale of liquors to minors, if the seller believed the purchaser to be of lawful age. Am. Law Reg. (Aug. 1886) 517 ; Bish. Crim. Law. Similar decisions have been made in other states under like statutes.

*M. Montgomery*, *State's Attorney*, and *H. C. Ide*, for the State.

Goods, not sent C. O. D., but sent as ordered, are the property of and at the risk of the consignee from the time of delivery to the common carrier ; but a C. O. D. package is, by agreement of the parties, and expressed by the letters attached to it, not to be delivered to the consignee till the end of the journey, when, upon payment, the goods become his. *Riley* v. *Wheeler*, 42 Vt. 532 ; *Miller* v. *Cushman*, 38 Vt. 593 ; *Hodges* v. *Fox*, 36 Vt. 81 ; *Handlette* v. *Tollman*, 14 Me. 400 ; *State* v. *O'Neil*, 58 Vt. 140.

Knowledge is not a necessary element of statutory crimes

unless the statute, in express terms or by necessary implication, makes it so.   12 Vroom, 589 ;   2 Allen, 160 ; 103 Mass. 452 ;   10 Allen, 199 ;   69 Ill. 601 ; 24 Wis. 60 ;   15 M. & W. 404 ; 19 Am. Law Rev. 478.

The opinion of the court was delivered by

ROWELL, J.   This is a complaint in one count for selling, furnishing, and giving away intoxicating liquor contrary to law.

The facts are these.   In the summer of 1883, one Pearson, who lived at East Barnet, ordered some lager beer from Bellows Falls, to be sent to him by express, and it came in a box directed to him and marked C. O. D.   The respondent was station agent, and also agent of the express company, at East Barnet, and as such express agent delivered said box and its contents to Pearson, and received from him the designated price of $1.75 for transmission to the consignor.   The respondent had no knowledge of what the box contained ; but the State claimed that from the form and size of the box, and the price paid, he had reason to suspect that it contained lager beer, and that he could have found out by opening the box.

In March, 1884, a box came by express to East Barnet from Manchester, N. H., marked C. O. D., and directed to Wm. Lowell, of South Danville, which is seven or eight miles from East Barnet.   The respondent, as express agent, delivered this box to one Badger, the driver of a daily stage between the two places, to be carried to Lowell ; and Badger then, or in a day or two after, paid the respondent the charges thereon, of about $3.50, with money furnished him by Lowell for that purpose ; but the respondent did not know whether it was Lowell's or Badger's money.   Before Badger started for South Danville that day the box was seized by an officer and he arrested, and on opening the box it was found to contain a gallon of alcohol in a jug.   There was no evidence that the respondent knew what the box contained, except that the testimony tended to show that there was such a perceptible odor of

liquor emitted from it that he had reason to suspect that it contained liquor, and he admitted that he did so suspect.

The respondent claimed, and requested the court to charge, that as he was an express agent, and his only connection with the matter was in that capacity, his acts were not in violation of law, unless the persons to whom he delivered the boxes obtained the beer and the alcohol for the purpose of disposing of it contrary to law, and that if he knew what the boxes contained it could make no difference; that he could not, in any event, be made liable unless it was found that he did know what they contained; that delivering them to the persons named, and receiving and remitting the money to the consignors, did not constitute a sale by him for which he could be held liable; and that delivering the box to Badger was only a delivery to another carrier, and not a sale nor a furnishing.

The court ruled that it was immaterial whether the respondent knew what the boxes contained or not, and that upon the facts proved, which were not disputed, the respondent was guilty of two illegal sales, and so instructed the jury, which returned a verdict accordingly.

It is undoubtedly true, as contended, that the respondent did not so become the seller of these packages as to make him civilly liable as such. But this does not settle the question; for one may well be criminally liable in respect of a transaction in which he engages as agent although he is not civilly liable.

A distinction is attempted to be made between the respondent's relation to the alcohol and his relation to the beer; but none exists, we think. It does not appear that the express company had undertaken to deliver the alcohol beyond the terminus of its own transit at East Barnet, nor that, according to the rules and usages of the business, it was its duty to deliver the package to the stage driver for further transit, nor that the driver was an express carrier, and so the company must be taken to have been the ultimate and not an intermediate carrier; and when the stage driver came with money furnished to him by

State *v.* Goss.

the consignee for that purpose, and took and paid for the package, he was acting, and seems to have been regarded as acting, for and on behalf of the consignee, and a delivery to him in the circumstances was a delivery to the consignee.

Now, applying the doctrine of *State* v. *O'Neil*, 58 Vt. 140, which seems to have received very general approval everywhere, here were certainly two illegal sales at Barnet, for which the consignors might legally be indicted and convicted. But when the packages came into the hands of the respondent, no crimes had been committed by any one in respect of illegal sales, for no sales had then been made, the transactions thus far constituted only *executory contracts of sales* in Bellows Falls and Manchester respectively; the *completed* sales—the things that constituted the offences—remained to be perfected, and this was done by the respondent. Thus the consignors themselves have committed no crimes by way of illegal sales except by the hand of the respondent, who, having done the essential acts that constitute the crimes, is responsible on general principles unless the circumstances shield him.

In *Commonwealth* v. *Whalen*, 16 Gray, 25, a wife was convicted as a common seller on proof that in the absence of her husband she had delivered and taken pay for liquors that he had previously bargained and sold. The court said that a delivery is an essential part of a sale, and that if she acted as the agent of her husband in what she knew to be illegal sales, by making delivery in his absence, it was such a participation in the misdemeanor as to make her responsible.

But do the circumstances shield the respondent? He says they do, because he says it was his duty to deliver the packages as he did, even though he had known their contents, and that he should have been liable had he not delivered them; while, on the other hand, it is said that he was bound to know their contents at his peril, and that his want of knowledge makes no difference.

Both of these propositions are untenable. As to the first, although express companies are common carriers, and liable

as such, yet the law neither requires nor permits them to do illegal acts; and they are not bound to transport and deliver intoxicating liquor nor other commodities if thereby they would commit an offense or incur a penalty. They cannot be allowed, any more than other people, knowingly and with imimpunity, to make themselves agents for others to break the laws of the State.

As to the other proposition, express carriers are not bound, as a general thing, to know the contents of packages offered to them for carriage. If they were, it would follow that they might refuse to carry without such knowledge; and as it would be unreasonable to require them to accept as conclusive the word of the shipper as to contents, they must have a right to inspect for themselves as a condition of carrying, which would occasion great inconvenience in practice. But no such rights exist as a general rule.

This precise question was passed upon by the Supreme Court of the United States in the Nitro-Glycerine Case, 15 Wall. 524, where the rule is laid down thus:

"It not, then, being his [the carrier's] duty to know the contents of any package offered to him for carriage, when there are no attendant circumstances awakening his suspicion as to their character, there can be no presumption of law that he had such knowledge in any particular case of that kind, and he cannot accordingly be charged, as matter of law, with notice of the properties and character of packages thus received."

In *Crouch* v. *The London and North Western Railway Company*, 14 C. B. 254, it is said that the proposition that a carrier has in all cases a right to be informed as to the contents of packages brought to him, and may refuse to carry them if the information is withheld, has not a shadow of authority to sustain it except a *dictum* of Best, C. J., in *Riley* v. *Horne*, 5 Bing. 217, and that in its generality it cannot stand the test of reasoning. But this case recognizes the right of the carrier to refuse to receive packages offered without being made ac-

quainted with their contents, when there is good ground for believing that they contain anything of a dangerous character; and it is said in the Nitro-Glycerine Case, that it is only when such ground exists, arising from the appearance of the package or other circumstances tending to excite suspicion, that the carrier is authorized, in the absence of special legislation on the subject, to require knowledge of the contents of the packages offered as a condition of receiving them for carriage.

In England, railway carriers are authorized by statute to refuse to take any parcel that they suspect to contain goods of a dangerous nature, or to require the same to be opened to ascertain the fact.

In *Brass* v. *Maitland*, 6 E. & B. 471, which holds it to be the duty of the shipper, when he offers goods of a dangerous character to be carried, to give notice of their character, the Chief Justice said : " It would be strange to suppose that the master or the mate, having no reason to suspect that goods offered for general shipment might not be safely stowed away in the hold, must ask every shipper the contents of every package." 1 Smith Lead. Cas. (7th Am. ed.) 389, 411.

If, then, in the absence of suspicious appearances or circumstances, an express carrier is neither bound to know nor authorized to find out, as a condition of receiving it, what a package contains that is offered to him for carriage, it would be strange to hold him guilty of a criminal offense because of the character of its contents; for in such case he is bound to carry, and liable if he does not, and the law will not compel a man to act and then punish him for acting,   Hence, the turning point of this case is, whether the respondent had reason to to believe or suspect—for it appears that he did not know—that these packages contained what they did.   If he did, he is charged with notice of their contents, and is guilty ; if he did not, he is not charged with such notice, and is not guilty ; and as the evidence tended to show he did, and the court ruled the point immaterial, the case must go back for a new trial.

Exceptions sustained and cause remanded for a new trial.