

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable Wm. J. Tucker, Executive Secretary
Game, Fish and Oyster Commission
Austin, Texas

Dear Sir:

Opinion No. 0-6029

Re: Criminal liability of Rail-
roads and Express Companies
under Article 929 and Section
le of Article 941, Penal Code.

We have your letter requesting an opinion from this
department on the above-captioned subject. The Articles of the
Penal Code above referred to make it illegal to take, sell,
offer for sale or to have in one's possession, certain species
of fish, greater than or less than a specified size.

Specifically your question asks whether or not Arti-
cle 929 and Section le of Article 941 apply to railroad and ex-
press companies having fish in their possession solely for the
purpose of transportation from seller to purchaser and whether
or not these statutes apply to sales by the railroad or express
companies under Articles 900 to 904, inclusive, V. A. C. S.

At the outset, we feel constrained to direct your at-
tention to this department's Opinion No. 0-2689, wherein we held
that a corporation, as such, is not liable to criminal prosecu-
tion in this State. However, the officers of a corporation as
well as every individual connected with the doing of the inhib-
ited act, may be prosecuted.

The first part of your question, then, resolves to
whether or not an agent or employee of a railroad or express com-
pany could be held criminally responsible for having in his pos-
session, fish of an illegal size, where such agent or employee
accepted the fish solely for the purpose of shipment from seller
to purchaser.

There being no reported cases in point, resort must
be had to analogous cases under facts not in legal effect dif-
ferent from those here obtaining.

The Supreme Court of Vermont in State v. Goss, 59 Vt.
266, 9 Atl. 829, said:

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTAN

"If, then, in the absence of suspicious ap-
pearances or circumstances, an express carrier is
neither bound to know nor authorized to find out,
as a condition of receiving it, what a package
contains that is offered to him for carriage, it
would be strange to hold him guilty of a criminal
offense because of the character of the contents;
for in such case he is bound to carry, and liable
if he does not, and the law will not compel a man
to act, and then punish him for acting. Hence the
turning point in this case is whether the respond-
ent had reason to believe or suspect--for it ap-
pears that he did not know--that these packages
contained what they did. If he did, he is charged
with notice of their contents, and is guilty; if
he did not, he is not charged with such notice and
is not guilty."

The Court in this case relied, in part, upon the Nitro-Glycerin
Case, 15 Wall. 524, wherein the Supreme Court of the United
States held:

"It not, then, being his (the carrier's) duty
to know the contents of any package offered to him
for carriage, when there are no attendant circum-
stances awakening his suspicion as to their charac-
ter, there can be no presumption of law that he had
such knowledge in any particular case of that kind,
and he cannot, accordingly, be charged, as a matter
of law, with notice of the properties and character
of packages thus received."

The Supreme Court of Illinois in construing a stat-
ute which made it unlawful to transport milk below a certain tem-
perature held that it was impractical, if not impossible, for
the railroad to ascertain the temperature of the milk and con-
cluded, ". . . it must be held that the provisions here in ques-
tion of this ordinance, so far as it applies to common carriers,
is unreasonable and void."

In answer to the first part of your question, the
carrier's agents and employees would not be liable in the ab-
sence of notice or knowledge of the illegal size of the fish.
It is a well-settled principle of law that ignorance of the law
is never a defense against a criminal act, but ignorance of any
fact that is an essential part of the criminal act is always an
excuse.

If the circumstances are such as are reasonably calculated to arouse suspicion or inquiry with respect to the contents of any package offered for shipment, the carrier may rely upon the representations of the shipper as to the nature of its contents. 8 Tex. Jur., Section 30, p. 57. Should the shipper inform the carrier of the illegal size of the fish or if from attendant circumstances the agent knew or could have reasonably ascertained the illegal nature of the fish, then he would be liable for having in his possession fish of an illegal size. But this, only where the suspicious appearances or circumstances of the shipment would create a duty to inquiry or investigate. It has been held, and we think properly, that a carrier in the absence of suspicious appearances or circumstances, is neither presumed to know nor authorized to find out, as a condition of receiving it, whether the package offered contains articles it is forbidden to carry. Elliott on Railroads, Second Ed., Sec. 1414a, p. 39.

We take this opportunity, however, to caution you that the interpretation placed on these statutes by this department does not license railroads or express companies to transport illegal or contraband goods, and such illegal or contraband goods may be seized by the lawfully constituted authorities wherever found. 8 Tex. Jur. Sec. 154, p. 244. It is our purpose here only to point out the defense available to a carrier in the event of prosecution under the above-mentioned statutes.

In the second part of your question you ask whether or not these fish may be sold by the carrier when unclaimed at their destination. We think not. We have here held that the carrier is exempt from criminal liability where he has no notice or knowledge of the illegal nature of the goods accepted for shipment. However, in case of a sale by the carrier, he would have authority to open the packages and examine their contents and would be charged with knowledge of their illegal nature.

Trusting this fully answers your inquiry, we remain

Yours very truly,

ATTORNEY GENERAL OF TEXAS

Approved Oct. 2, 1944
Carlos C. Ashley
First Assistant
Attorney General

By s. Benjamin Woodall
Assistant

BD/JCP/ddt

By s. Bob Donahue

Approved Opinion Committee By BWB, Chairman