THE CITY OF CHICAGO, Defendant in Error, *vs.* THE CHICAGO AND NORTHWESTERN RAILWAY COMPANY, Plaintiff in Error.

*Opinion filed October 24, 1916.*

1. MUNICIPAL CORPORATIONS—*municipality may regulate kind of milk to be sold within its limits.* A municipal corporation may regulate the kind of milk to be sold within its limits, and the regulations may indirectly affect the production of milk on farms outside the city by requiring the milk to be cooled immediately after being taken from the cow and kept cool until it is transported for delivery.

2. SAME—*regulations governing the sale of milk are valid if reasonable.* Regulations governing the sale and delivery of milk within the limits of a city are authorized under the police power and are valid if reasonable and adapted to the object sought to be attained.

3. SAME—*Chicago milk ordinance applies to common carriers.* The provisions of the Chicago milk ordinance making it unlawful for any person, firm or corporation to transport into the city or

transport or deliver from point to point within the city milk or cream having a higher temperature than that specified in the ordinance apply to common carriers.

4. SAME—*when common carrier need not accept milk for transportation.* The rule that a common carrier must ordinarily accept all freight tendered for carriage does not require that it accept milk for transportation which is of a higher temperature than is permitted by an ordinance of the city to which the milk is consigned, provided there is any practicable way for the carrier to test the temperature of the milk, and provided the milk cannot, by proper treatment after its acceptance, be cooled to the required temperature before it reaches its destination.

5. SAME—*when provision of ordinance is unreasonable.* A provision in a milk ordinance making it unlawful for a person, firm or corporation to transport into the city milk having a higher temperature than 55 degrees Fahrenheit is unreasonable as to common carriers transporting milk in large quantities, where the ordinance requires the milk to be shipped in sealed cans and prohibits the breaking of the seal, and where there is no proof that the carrier could make a practicable test of the temperature of the milk without violating the ordinance by breaking the seal.

WRIT OF ERROR to the Municipal Court of Chicago; the Hon. SAMUEL H. TRUDE, Judge, presiding.

CHARLES A. VILAS, (EDWARD M. HYZER, WILLIAM G. WHEELER, CARL S. JEFFERSON, and WILLIAM D. BARGE, of counsel,) for plaintiff in error.

SAMUEL A. ETTELSON, Corporation Counsel, HARRY B. MILLER, Prosecuting Attorney, and RICHARD S. FOLSOM, (DANIEL WEBSTER, of counsel,) for defendant in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

The city of Chicago brought suit in the municipal court of that city against plaintiff in error for the violation of a city ordinance regulating the production, transportation and sale of milk. Jury was waived and a trial had before the court, the material issues of the case being submitted by a stipulation of facts, and a judgment was entered imposing

a fine of $100 upon the plaintiff in error. The trial judge certified that the validity of a municipal ordinance was involved and that in his opinion the public interest required that the case should be taken directly to this court, and it has been brought here by writ of error.

The ordinance here in question is a long one, of about twelve printed pages, covering in detail practically all matters regarding the supervision of the production, handling and delivery of milk to be sold within the city of Chicago,— not only its treatment in the city, but on the farm from whence it is shipped, including the straining and cooling of the milk immediately after the cows are milked and the temperature at which it shall be kept from that time until delivered to the consumers in Chicago. The particular section of the ordinance here in question reads: "It shall be unlawful for any person, firm or corporation to transport into the city of Chicago, or to transport or deliver from point to point within the city, milk, cream, skim milk or buttermilk for human consumption which is of a higher temperature than 60 degrees Fahrenheit, provided that after June 1, 1914, it shall be unlawful for any person, firm or corporation to transport into the city of Chicago, or to transport from point to point within the city, or to deliver, any milk, cream, skim milk or buttermilk for human consumption which is of a temperature higher than 55 degrees Fahrenheit."

The record shows that plaintiff in error is a common carrier and in the course of its business transports milk from various parts of the State into the city of Chicago; that on August 21, 1914, it received at Cary and Hartland, stations on its road, various cans of milk for transportation into Chicago, which it carried over its line and delivered at certain platforms in that city, and that upon delivery thereof the temperature of the milk was from 67 to 76 degrees Fahrenheit; that the milk was brought to the city in baggage cars having no refrigerating facilities, the trip taking

in the neighborhood of two hours; that milk trains started as early as 6:40 in the morning, making various stops, and the milk being taken on from platforms at various stations along the road, at some of which places there were no agents or employees of plaintiff in error when the trains arrived; that the milk thus transported went into the homes of various families in Chicago for baking, drinking and cooking.

Counsel for plaintiff in error admit that a municipality has the power to regulate what kind of milk shall be sold within its limits and that such rules and regulations may indirectly affect the production of the milk on the farms outside the city limits, and that it may thus apply regulations that will, in effect, require milk to be cooled immediately after it is taken from the cow and to be kept cool until transported to the city for delivery. This is undoubtedly the law. Municipal corporations are usually invested with express power to preserve the safety and health of the inhabitants. In determining the validity of such ordinances it has long been the established rule that municipal corporations, under legislative sanction, may prescribe such regulations as may be reasonably necessary to secure the general health and prosperity of the people. (2 Dillon on Mun. Corp.—5th ed.—sec. 677; 3 McQuillin on Mun. Corp. sec. 969.) This court, in construing certain provisions of this same ordinance with reference to the regulations for pasteurizing milk, in *Koy* v. *City of Chicago,* 263 Ill. 122, upheld the validity of the ordinance in that respect, reviewing at some length the authorities on the question of the power of municipalities to enact ordinances of this character, and, in effect, holding regulations such as are before us in this case valid, provided they are reasonable and are adapted to the objects sought to be attained. See, also, *City of Chicago* v. *Bowman Dairy Co.* 234 Ill. 294; *People* v. *Department of Health,* 189 N. Y. 187; *State* v. *Broadbelt,* 89 Md. 565; *State* v. *Schlenker,* 112 Iowa, 642; *Adams* v. *Milwaukee,* 144 Wis. 371.

275 – 3

Plaintiff in error, however, contends that the ordinance here in question, if intended to apply to common carriers, is invalid, being unreasonable in its method of regulation; that other provisions of the ordinance require that cans of milk be sealed before they are shipped and that the seals shall remain unbroken during transportation by the carrier, and that the carrier, therefore, cannot ascertain the temperature of the milk at the time it is shipped. Under any fair construction we think the ordinance was intended to apply to common carriers in the transportation of milk from the country to the city, otherwise it would be ineffective. The object sought to be obtained would be absolutely defeated if common carriers, in the transportation of milk from the country to the city, were not required to keep it cool in transit. Very little, if any, proof is found in the record with reference to the reasons for keeping milk cool while it is being shipped, it being evidently assumed that the court would take judicial notice of the fact that the requirement of keeping milk cool from the time it is taken from the cows on the farm until sold to the consumer is a reasonable health regulation. The authorities submitted in the briefs do not show with certainty whether the greatest advantage from keeping the milk cool is to assist in the salable quality of the milk or whether it tends most strongly for the promotion of health. The authorities cited, however, indicate that milk which is allowed to become heated above a certain temperature develops, by multiplication, harmful bacteria, and that no subsequent refrigeration or cooling of the milk will destroy those bacteria; that if the milk is cooled at the stable on the farm, as required by the ordinance, and kept cool until it is delivered, while such treatment will not destroy the bacteria already present it will restrain the multiplication thereof and "is a deterrent, especially to harmful bacteria." Counsel for plaintiff in error practically concede that this is true, so that it is unnecessary for us to re-state the reasons why the care of milk, it be-

ing an article of food in such general use, should be fully regulated by statute or ordinance for the promotion of the health of the public, as was stated at length in *Koy* v. *City of Chicago, supra.*

Whether the ordinance, in its requirements as to the temperature of milk transported or delivered by a common carrier, is reasonable in view of its other provisions is of a much more serious character. We do not agree with the argument of counsel for plaintiff in error that as common carriers ordinarily must accept all freight tendered, therefore they would not be justified in refusing to receive cans of milk even though they were not within the limitations of temperature required by this ordinance. Common carriers would surely be justified in refusing to accept such milk at a higher temperature if impracticable to reduce it to the proper temperature while it was being transported by them to the city. It is not intended that they shall be required to accept all freight delivered to them if by so doing they would violate the provisions of other valid statutes or ordinances. (*Milwaukee Malt Extract Co.* v. *Chicago, Rock Island and Pacific Railway Co.* 73 Iowa, 98.) Under the circumstances here indicated, if the milk could not be cooled to a proper temperature after it was received, and if there were any practicable way for the common carrier to test the temperature of the milk before accepting it for transportation, the carrier would be justified in refusing to accept it if it were not at the proper temperature. *State* v. *Goss,* 59 Vt. 266; 4 R. C. L. 666; 6 Cyc. 372, note; 210 Fed. Rep. 378; 219 id. 339.

The record shows that no attempt was made to take the temperature of the milk in question at the time it was taken into plaintiff in error's cars at the stations outside of Chicago, and it is contended by counsel for the railway company that it is not only impracticable, but impossible, under the provisions of this ordinance, to make any test that would relieve the common carrier from responsibility if the milk

were not at a proper temperature when taken into its cars. Counsel for the city concede that the milk is required to be carried in sealed cans, which may not be opened from the time they are received by the carrier until delivered in the city, but they argue that the approximate temperature of the milk can be obtained by thermometers applied to the outside of such cans. While there is no proof on this question in the record itself, the city offered, as a part of its brief, the record of tests that have recently been made by the city authorities by the application of thermometers to the outside of milk cans. These tests show the differences between the temperature of the milk at the center of the can, inside, and the temperature on the outside of the wall of the can, ran as high as 5.1 degrees Fahrenheit, the average difference in seventeen tests being 2.58 degrees. The officials of the city health department made these tests, and they gave it as their opinion that for practical purposes a temperature of 57 degrees Fahrenheit on the outside of the milk can would be evidence that the contents had a temperature of 55 degrees Fahrenheit or less, and counsel for the city argue that plaintiff in error could make such tests and thus comply with the ordinance. Of course, these tests are not properly in the record. They have been made since the trial of the case in the municipal court and plaintiff in error has had no opportunity of investigating as to their correctness, either by cross-examining the city officials who made them, or in any other way. But even if they were properly in the record, would that make the ordinance reasonable? It is apparent from what there is in the briefs with reference to the tests, that they cannot be made with any accuracy quickly. These tests were doubtless made under very favorable conditions, and doubtless, also, there was ample time and every opportunity for cautious and deliberate action in making them. Is it practicable to make such tests under such circumstances as they must be made at the various shipping stations on plaintiff in error's road? It

appears from the record and briefs that many cans are taken on at some of these stations,—sometimes as many as one hundred,—and that the stopping time of the milk train must necessarily be very limited. From what is before us we do not think it would be practicable to make such a test by a thermometer placed on the outside of each milk can. A reasonable ordinance cannot require what by its very terms it makes impossible. It cannot fix a penalty for failing to do that which it prohibits. This ordinance prohibits the seal being broken on the can while it is being transported by the common carrier. We do not see, on this record, how it is possible for a positive test to be made as to the temperature of the milk within the can,—such a test as will assure the carrier that it is safe in accepting the milk.

A regulation requiring cars carrying milk not to be allowed to become heated above a stated temperature could be enforced without great hardship to the railroad company, and such temperature could be readily ascertained. It appears from the record that at the platforms from which the milk is taken onto the cars there is often no other railroad business being transacted and the cans are often brought and left there in advance of the arrival of the milk trains. The conditions under which milk is shipped are very different from those under which fruit and vegetables are shipped in refrigerator cars for long distances. Canned milk might be carried on trains for a sufficient length of time,—even if received in a warm condition, several degrees above 55 F.,—to cool it to a proper temperature if the cars were properly refrigerated. But there is no proof in the record on this question, and on what is before us we are not prepared to hold that plaintiff in error could reasonably be required to furnish such cars. It is obvious that for the short hauls from some of the near-by stations, the length of time the milk is carried in the cars would not be sufficient to cool it to the proper temperature, no matter what system of cooling the cars were adopted by plaintiff in error. It seems to

be very important that the milk should be as short a time as possible in transit from the country to the city.

The city council has authority to pass ordinances regulating this question, and the question of regulation, in the first instance, rests with the municipal authorities, but whether its exercise in a particular case is reasonable is a judicial question. There must be some logical connection between the object sought to be· accomplished by such an ordinance and the means prescribed to accomplish the end. An unreasonable ordinance will be held void by the courts. (*City of Lake View* v. *Tate,* 130 Ill. 247; *People* v. *Ericsson,* 263 id. 368; *Koy* v. *City of Chicago, supra;* 3 McQuillin on Mun. Corp. sec. 893; 2 Dillon on Mun. Corp.— 5th ed.—secs. 589, 591.) It is true that the common carrier should not be permitted to be the one agency of those handling milk between the time it is milked and the time it reaches the consumer to defeat the purposes of a reasonable health· ordinance on that subject; neither should the common carrier be burdened with an impracticable regulation which makes it responsible for the possible neglect of another person or agency in not bringing the milk to the station at a temperature required by the ordinance. As the ordinance reads, plaintiff in error could be made liable for the neglect of the dairyman bringing the milk and delivering it at the train. Even if it were practicable to take the test on the outside of the can, it is no answer to say that plaintiff in error could not be held liable if it approximated the temperature within two or three degrees. The ordinance does not so provide. It states in definite terms that it is unlawful to transport milk into the city of Chicago at a temperature higher than 55 degrees Fahrenheit. An ordinance, to be reasonable, should be certain. (Cooley's Const. Lim.—7th ed.—284.) Manifestly, .this ordinance is not certain if it be construed that the approximate temperature of the milk in the can is all that is required. On the record and proof before us we do not see how. the courts could

say that plaintiff in error had complied with the ordinance if it made the test on the outside of the cans and it were afterwards found that the test was not correct, even though it were shown that it was within two degrees of being correct. Neither, on this record and proof, do we think the courts could hold that the ordinance was being complied with if the proof showed that the cars in which the milk was transported to the city were at a temperature of 55 degrees or less, if when the milk reached Chicago it were found to be at a higher temperature than that provided by the ordinance. In *South Covington Railway Co.* v. *Covington,* 235 U. S. 537, it was held that a regulation providing that the temperature of cars should never be permitted to be below 50 degrees Fahrenheit was unreasonable, when the evidence showed that it was impossible, in the operation of the cars, to keep them uniformly up to this temperature. By the same line of reasoning, on the record before us, it must be held that the provision here in question of this ordinance, so far as it applies to common carriers, is unreasonable and void.

We realize how important this question is to the health of the people of Chicago and the State at large, and we have no hesitation in re-affirming the rules laid down in *Koy* v. *City of Chicago, supra,* and *City of Chicago* v. *Bowman Dairy Co. supra,* with reference to the right of the authorities of the city of Chicago to make all proper and reasonable regulations with reference to the care, transportation, sale and delivery of milk in order to protect and promote the health of the people,—especially the children,—of that great city. On this record it is impossible to tell what practicable regulations should be included in an ordinance with reference to the transportation of milk by common carriers from the various shipping points to the city of Chicago. Counsel in their briefs now seem to concede that they did not realize the far-reaching effect of the questions here under discussion until after the case was brought to this court.

We regret that the evidence presented on the trial did not fully cover the question of what would be reasonable regulations with reference to any test that could be practicably applied to find the temperature of the milk at the time of taking the cans onto the trains, and also what would be reasonable regulations with reference to the temperature of cars used for transporting milk, and what methods would be practicable for keeping cars at the proper temperature. If, when the case is sent back to the trial court, the city authorities are of the opinion that proof can be presented that would show that this ordinance is reasonable on these and all other questions involved herein, under the rules heretofore laid down, they will, no doubt, present such proof. Plaintiff in error will then have an opportunity of cross-examining any witnesses that may be offered and of presenting any evidence that it desires upon any of the questions that have here been touched upon. On such a record, doubtless, the court could pass much more satisfactorily upon the reasonableness of this ordinance than it can upon the record before us. Notwithstanding divers scientific theories, upon subjects of this nature the courts usually defer to the determination and decisions of the proper municipal authorities as to the basis of police regulations, unless such basis is manifestly erroneous. (3 McQuillin on Mun. Corp. sec. 969.) As we have stated before, however, on the record before us this ordinance, so far as it applies to plaintiff in error and common carriers in like situation, must be held an unreasonable exercise of the police power.

The judgment of the municipal court must be reversed and the cause remanded for further proceedings in harmony with the views herein expressed.

*Reversed and remanded.*