(No. 19387.
JOHN S. PHIPPS *et al*. Appellees, *vs*. THE CITY OF CHI-
CAGO, Appellant.

*Opinion filed April 17, 1930.*

316

SAMUEL A. ETTELSON, Corporation Counsel, SAMUEL B. KING, and BARNET HODES, for appellant.

SIMS, GODMAN & STRANSKY, (FRANKLIN J. STRANSKY, and JAMES S. HANDY, of counsel,) for appellees.

Mr. COMMISSIONER PARTLOW reported this opinion:

Appellees filed their bill in the circuit court of Cook county in which they alleged that a certain zoning ordinance of the city of Chicago passed on May 19, 1926, was void because it was unreasonable and not within the power of the city council to pass; that it was an amendment to the general zoning ordinance of April 5, 1923, and in terms re-classified a tract of land owned by appellees as beneficiaries under a certain declaration of trust, changing it from commercial and industrial uses to apartment and residential purposes; that the tract was unsuitable for apartment and residence purposes; that its highest and best use was for commercial and industrial purposes; that the effect of re-zoning it was to damage its value $300,000; that prospective purchasers refused to buy any portion of the tract because of such re-zoning ordinance; that the ordinance was a matter of public record and constituted a cloud on appellees' title, and the prayer was that it be removed as a cloud.

The cause was referred to a master to take the evidence and report his conclusions. All of the facts were stipulated before the master and he recommended a decree as prayed. Exceptions to his report were overruled, a decree was entered as recommended, and an appeal has been prosecuted to this court.

The stipulation shows that the land in question consisted of twenty-eight acres in the northwest part of the city of Chicago and was known as the Keeney Industrial District. It was about 1536 feet long east and west and about half as wide north and south. It was bounded on the north by the Galewood yards of the Chicago, Milwaukee and St. Paul Railway Company, on the east by North Central avenue extended, on the south by Bloomingdale avenue and on the west by North Mansfield avenue. Two main passenger tracks extended along the north side of this railroad yard. Between the main tracks and the land in question are about fifty lead, freight and loading tracks. In the center of the yards, opposite the land in question, is a large freight house extending from Central avenue almost to Mansfield avenue, which acts as a sounding board for the noise from moving trains and cars. For almost twenty-four hours each day freight cars are switched in these yards by coal-burning engines for the purpose of handling trains and loading and unloading cars at the freight house. All of these engines burn soft coal and emit large amounts of smoke and cinders and they make considerable noise. Surrounding these yards are numerous industrial and manufacturing plants, twenty-five of which are served with cars by switch-track connections with the yards. East of the Galewood yards are the Cragin yards of the same railroad, which serve numerous industries and have switching connections therewith. The location and elevation of the land in question are such as to make it easy and inexpensive to construct side-tracks and switch-tracks from the Galewood yards to serve manufacturing industries located thereon.

East of this land, on North Central avenue, is a large bridge or viaduct extending almost the entire width of the tract and across the Galewood yards. It rises gradually to a height of approximately thirty feet above the elevation of the east part of the land in question. It is admitted that no residence or apartment could be constructed to advantage facing on Central avenue adjacent to this viaduct. There are no public highways or streets crossing Galewood yards except the viaduct on Central avenue.

On February 18, 1920, the city council of Chicago, pursuant to the Zoning act of 1919, passed an ordinance creating a zoning commission, and on July 22, 1921, twenty-two persons were appointed as such zoning commission. The commission began the preparation of a comprehensive zoning ordinance for the entire city. It employed expert help, sought the advice of various public organizations, and on January 5, 1923, after about eighteen months' investigation, presented to the city council a tentative report of its proceedings, including a draft of a proposed general zoning ordinance of the city, with maps and plats showing in detail a classification of territory as contemplated by the statute. After the ordinance was submitted hearings were had thereon, and Mills & Sons and the North Austin Manor Neighborhood Club made objections to the zoning of the tract in question, and the territory to the west and south thereof, as commercial and industrial areas. The commission, after hearing their objections, refused to change the ordinance. The ordinance was passed on April 5, 1923, and in it this tract of land, and the territory to the east, west and south of the Galewood yards, were classified as manufacturing and commercial districts. The south 125 feet of the land in question was zoned as commercial and the balance of it as manufacturing. Mills & Sons owned part of the territory east and west of the tract in question, and they subdivided the same, erected small two-story apartments thereon and sold the same. On November 19, 1924, an

ordinance was passed changing part of the territory owned by Mills & Sons from a manufacturing to a residence use.

On January 7, 1925, Mills & Sons, for a consideration of $7500, secured from Albert F. Keeney, who then owned the tract in question, a contract or agreement running with the land, whereby it was agreed that the west fifteen feet of the Keeney tract abutting North Mansfield avenue and the south fifteen feet thereof abutting Bloomingdale avenue should at all times be kept free and clear of structures of all kinds; that no common brick should be used in the outside course of any exterior wall; that all fences should be of a type known as cyclone fences, and that soft coal should not be used for the production of power in any building erected on that area.

Appellees are the trustees of the Phipps Industrial Land Trust, which was created for the purpose of acquiring sites suitable for industrial and manufacturing purposes and advertising, subdividing and selling the same for that purpose. Appellees have handled various tracts of land in Chicago in this manner and the tract in question was purchased for that purpose. Mills & Sons, whose names frequently appear in the stipulation, are real estate operators engaged in acquiring vacant real estate for subdivision purposes and the construction of small two-story apartment buildings thereon which they sell upon contracts. On January 14, 1925, appellees purchased the tract in question.

On October 28, 1925, certain persons caused to be introduced into the city council of Chicago the amendatory ordinance in question changing the classification of the land in question from commercial purposes to residence purposes. It is admitted by the stipulation that the board of appeals appointed under the ordinance of April 5, 1923, did not give notice of a public hearing on the proposed amendment; that no such notice was published by the city clerk of the city or by anyone for or on behalf of the board of appeals; that no hearing was had before said board concerning such

amendatory ordinance, nor did said board make any finding
or report as provided in section 4 of the Zoning statute;
that the only notice of a public hearing was published on
November 7, 1925, in one edition of a Chicago paper, which
edition was not circulated generally among its subscribers
but was placed for sale only upon the news stands in the
city and had a very limited circulation, and that such notice
was not included in any of the other five editions of said
paper on that date. What purported to be a public hearing
was held before a committee known as the committee on
buildings and zoning, which committee was never desig-
nated by the city council to conduct a hearing with refer-
ence to the adoption of zoning ordinances until January 19,
1927, more than a year after the hearing in this case. Sec-
tion 29 of the zoning ordinance of April 5, 1923, provided
that the regulations imposed for districts created in the
ordinance might be varied or amended from time to time
by ordinance, but no such variation or amendment should
be made without a hearing before the board of appeals, at
which persons interested should be afforded an opportunity
to be heard; that any proposed variation or amendment
which had failed to receive the approval of the board of
appeals should not be passed except by the favorable vote
of two-thirds of all members of the city council. The
amendatory ordinance was passed on May 19, 1925. No
land other than the tract in question was included.

As grounds for reversal it is urged by appellant that
appellees are precluded from equitable relief because they
had an adequate remedy at law to which they did not resort,
namely, application to the zoning board of appeals, and that
the action of the city council in re-zoning the tract was
within the scope of the reasonable exercise of the zoning
powers of the city.

Appellees insist that the facts set forth in the bill and
the stipulation are sufficient to entitle them to equitable re-
lief; that the amended zoning ordinance of May 19, 1926,

contravenes section 2 of article 2 of the State constitution and the fourteenth amendment to the Federal constitution, which provide that no person shall be deprived of his life, liberty or property without due process of law; that it contravenes the provision of the State constitution which prohibits the taking or damaging of private property for public use without just compensation; that it impairs the obligation of a certain contract in the nature of a covenant running with the land in question; that it is null and void because no hearing was had prior to its passage before some commission or committee designated by the city council, as provided in section 4 of the Zoning act of 1921 as amended in 1923.

In support of the contention that appellees had an adequate remedy at law by application to the zoning board of appeals, appellant cites *Deynzer* v. *City of Evanston,* 319 Ill. 226. The facts in that case are not identical with the facts here presented and that case is not conclusive of this question. The question of the constitutionality and validity of an amendment to an original zoning ordinance involving only one piece of property where rights had become fixed was not in question in that case.

In *Western Theological Seminary* v. *City of Evanston,* 325 Ill. 511, the facts are quite similar to the facts in this case. In that case the zoning board of appeals held that under the original zoning ordinance a building to be used for college purposes could be legally erected. Later the ordinance was amended prohibiting its erection. A bill for an injunction was filed on the ground that the amendment was invalid. The chancellor sustained a demurrer to the bill. This court reversed the decree and held that equity will not enjoin the enforcement of a void ordinance on the ground, alone, of its invalidity or of apprehension in regard to what may be done under it, but it will enjoin the enforcement of a zoning ordinance as amended where the effect of the amendment is to arbitrarily deprive the com-

plainant of the right to use extensive grounds which it had purchased in reliance upon the ordinance prior to its amendment, and where the effect was to cloud complainant's title and was immediately destructive of the value of the property for the use intended and hindered the complainant in securing funds for building purposes. On page 528 it was said: "The amendatory ordinance, according to the allegations of the bill, was an arbitrary and unreasonable exercise of power in respect to the property of the appellant. It is void as to such property, but its existence is a cloud upon the appellant's title, is immediately destructive of its value, and therefore constitutes a present invasion of appellant's rights and a threat to continue such invasion." In that opinion this court cited with approval *Village of Euclid* v. *Ambler Realty Co.* 272 U. S. 365, where a bill was filed to enjoin a zoning ordinance on the ground that it was unconstitutional. A motion was made to dismiss the bill on the ground that complainant had made no effort to obtain a building permit and had not appealed to the zoning board of appeals for relief. In holding that this motion was properly overruled the court said: "The effect of the allegations of the bill is that the ordinance of its own force operates greatly to reduce the value of appellee's lands and destroy their marketability for industrial, commercial and residential uses, and the attack is directed not against any specific provision or provisions but against the ordinance as an entirety. Assuming the premises, the existence and maintenance of the ordinance in effect constitutes a present invasion of appellee's property rights and a threat to continue it. Under these circumstances the equitable jurisdiction is clear." To the same effect is *Dobbins* v. *Los Angeles,* 195 U. S. 223. Under these authorities equity had jurisdiction and it was not necessary to first apply to the appeal board.

There is another reason why equity had jurisdiction. Section 3 of the Zoning statute as amended in 1923 provides that the city council may provide for a board of ap-

peals consisting of five members; that all ordinances passed under the act shall be enforced by such officers of the city as may be designated by ordinance; that the regulations by the act authorized may provide that a board of appeals may determine and vary their application in harmony with their general purpose and intent and in accordance with general and special rules therein contained; that where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of such ordinance, the board of appeals shall have the power, in passing upon appeals, to vary or modify the application of any of the regulations or provisions of such ordinance relating to the use, construction or alteration of buildings or structures or the use of land so that the spirit of the ordinance shall be observed, public safety and welfare secured and substantial justice done. The record in this case shows that the city council of Chicago did not until January 19, 1927, vest or attempt to vest the board of appeals with all of the powers specified in section 3. Under the general zoning ordinance of April 5, 1923, the board of appeals was given no power to make any variations or changes in the use to which any tract of land might be put, and section 29 of that ordinance provided that variations from or amendments to the ordinance must in all cases be made by ordinance.

Section 4 of the Zoning act as amended in 1923 makes provision for protests and amendments, but the amendments are not to be made by the appeal board but are to be made by ordinance. It provides that the regulations imposed and the districts created may be amended by ordinance after the ordinance establishing them has gone into effect, but no such amendment shall be made without a hearing before some committee or commission designated by the city council. Provision is made for fifteen days' notice, by publication, of such application for a change. It provides that written protests may be filed against the amendment by twenty per cent of the frontage proposed to be altered

or by twenty per cent of the frontage directly opposite the frontage to be altered, and such amendment shall not be passed except by a favorable vote of two-thirds of the members of the city council.

In this state of the record at the time the bill was filed in this case the zoning board of appeals had no authority to make any variations or changes in the use of the land in question. It had no power to afford such relief to appellees as would constitute an adequate remedy at law, and appellees were not deprived thereby of any remedies to which they might be entitled in a court of equity. The board of appeals, being an administrative and not a judicial tribunal, had no power to determine the constitutional questions concerning the vested property rights which the appellees were seeking to protect. The force and effect of the bill was that the amendatory ordinance was unconstitutional, null and void. If the amendatory ordinance was unconstitutional, null and void, appellees were not compelled to inferentially admit its binding force and effect by appeal to the board of appeals but they had the right to file a bill in equity. They had no adequate remedy at law, and equity had full and complete jurisdiction of the cause.

The next question is whether the ordinance is unconstitutional. Zoning laws are based upon the police power of the State to enact such laws as are for the safety, health, morals and general welfare of the people. The legislature may not, under the guise of protecting the people's interests, arbitrarily interfere with private rights. The legislative determination as to what is a proper exercise of the police power is not conclusive but it is subject to review by the courts. (*City of Chicago* v. *Chicago and Northwestern Railway Co.* 275 Ill. 30; *Koy* v. *City of Chicago,* 263 id. 122; *People* v. *Elerding,* 254 id. 579.) If the means employed have no real, substantial relation to public objects within the State's power, or if those means are arbitrary and unreasonable, courts will disregard mere form and in-

terfere for the protection of rights injuriously affected by such illegal action. (*People* v. *Robertson*, 302 Ill. 422; *Condon* v. *Village of Forest Park*, 278 id. 218.) An act which deprives a citizen of his liberty or property cannot be sustained under the police power unless due regard for the public welfare, health, comfort and safety requires it. (*People* v. *Village of Oak Park*, 331 Ill. 406.) "Property" has been defined to include every interest anyone may have in any and everything that is the subject of ownership by man, together with the right to freely possess, use, enjoy and dispose of the same. (*Bailey* v. *People*, 190 Ill. 28.) The right of user is a part of the property right guaranteed by the constitution. (*City of Chicago* v. .*Wells*, 236 Ill. 129.) The owner of property has a constitutional right to make any use of it he desires so long as he does not endanger or threaten the safety, health, comfort or general welfare of the people. (*McCray* v. *City of Chicago*, 292 Ill. 60; *People* v. *City of Chicago*, 280 id. 576; *Condon* v. *Village of Forest Park, supra.*) This right cannot be wholly taken away or limited by the State except in so far as it may become necessary for the individual rights to yield to the higher and greater law of the best interests of the people. (*City of Aurora* v. *Burns*, 319 Ill. 84.) In *Western Theological Seminary* v. *City of Evanston, supra,* this court held that the privilege of every citizen to use his property according to his own will is both a liberty and a property right; that "liberty" includes not only freedom from servitude or restraint, but also the right of every man to be free in the use of his powers and faculties, to pursue such occupation or business as he may choose, and to use his property in his own way and for his own purposes, subject, only, to the restraint necessary to secure the common welfare.

In this case it was stipulated that the purpose of creating the zoning commission in the first instance was to formulate a wise and comprehensive plan of zoning whereby the territory within the city of Chicago should be classified as

a whole on a stable and lasting basis, so that persons desiring to purchase real estate after the enactment of a zoning ordinance could purchase real estate with the assurance that the classification would not thereafter be changed to the detriment of the purchasers unless it was clear that such changes were reasonably necessary to protect the public health, safety, comfort, morals and welfare of said city; that the report of the commission on January 5, 1923, zoned for manufacturing purposes all of the property, with a few exceptions, adjacent to railroad rights of way; that it classified for manufacturing purposes the property on both sides of the right of way of the Galewood yards from North Kostner avenue on the east to Oak Park avenue on the west, including the land in question; that the amount of vacant land available for manufacturing purposes and accessible to railroad facilities on May 19, 1926, (the date the amendatory ordinance was passed,) in the vicinity of the land in question was limited in area and not sufficient to meet the requirements of industrial expansion; that the fair cash market value of the property at the time of the passage of the amendatory ordinance of May 19, 1926, was much greater for manufacturing and commercial purposes than it was or could be for apartment or residence purposes; that on January 14, 1925, appellees, relying upon the fact that the tract in question had been classified and zoned for manufacturing and commercial purposes and relying upon the refusal of the city council to amend said ordinance, and believing that said property was not suitable for apartment purposes and that its highest and best value was for manufacturing and commercial purposes, purchased this tract of land; that under the terms of the amendatory ordinance this property cannot be used either for manufacturing or commercial purposes, and that by reason of the restrictions placed upon it any purchaser thereof would be required to conform to the requirements with reference to buildings, as provided in the contract between Mills & Sons and Keeney.

When appellant passed the original zoning ordinance its powers were not exhausted. It could amend the ordinance. But the power to amend was not arbitrary and could not be exercised merely because someone wanted it done or thought it ought to be done. It could only be exercised when the public good demanded or required that the amendment be made. When appellees bought the land they had a right to rely upon the classification which existed at the time the purchase was made. They also had a right to rely upon the rule of law that the classification would not be changed unless the change was required for the public good. The reasons for making the change are found in the stipulation upon which the case was tried. The only changed condition which could possibly justify the amendment is that between April 5, 1923, and May 19, 1926, other territory in the immediate neighborhood had been changed from commercial uses to residence purposes and that numerous two-apartment buildings had been built. There was evidence tending to show that the amendment was made because certain parties wanted it made so they could build more buildings for residence purposes. When all the facts contained in the stipulation are considered they do not show such a requirement for the public good as justified the amendment to the classification. The amended ordinance was unreasonable and invaded the rights of appellees without justification.

Other grounds are urged by appellees relative to the manner in which the amended ordinance was passed, but it will not be necessary to consider them.

We find no reversible error, and the decree will be affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Decree affirmed.*